MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Deutsche Bank Securities, Inc., Goldman, Sachs & Co., Inc., J.P. Morgan Securities LLC, and RBS Securities, Inc., Defendants.

Civil Action No. 2011–30285–PBS.

United States District Court, D. Massachusetts.

Sept. 23, 2013.

A. William Urquhart, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY, Colleen Keating, David C. Armillei, Farbod S. Moridani, Harry A. Olivar, Jr., Jennifer D. English, Molly Stephens, Safia G. Hussain, Viola Trebicka, Quinn, Emanuel, Urquhart & Sullivan, LLP, Los Angeles, CA, Jennifer J. Barrett, Philippe Z. Selendy, Quinn, Emanuel Urquhart & Sullivan, LLP, New York, NY, John J. Egan, Stephen E. Spelman, Edward J. McDonough, Jr., Egan, Flanagan & Cohen, PC, Springfield, MA, for Plaintiff.

Andrea J. Robinson, Jeffrey B. Rudman, Adam Hornstine, Nolan Mitchell, Wilmer Hale LLP, Darren T. Griffis, Harriet Hoder, Wilmer Cutler Pickering Hale and Dorr LLP, Mark A. Berthiaume, Zachary C. Kleinsasser, Greenberg Traurig LLP, Kathy B. Weinman, Azure M. Abuirmeileh, Collora LLP, Boston, MA, Alan Turner, David J. Woll, Thomas C. Rice, Simpson Thacher & Bartlett P.C., Robert H. Baron, Christopher D. Belelieu, Karin DeMasi, J. Wesley Earnhardt, Daniel Slifkin, Cravath, Swaine & Moore LLP, S. Gale Dick, Lawrence Gresser, Brett D. Jaffe, Scott Thomson, Cohen & Gresser LLP, Katherine B. Dirks, Office of the Attorney General, Theodore Edelman, Richard H. Klapper, Lara J. Loyd, John Quinn, Jordan T. Razza, Kamil E. Redmond, David M.J. Rein, Stephanie G. Wheeler, Sullivan & Cromwell, LLP, New York, NY, Jeffrey L. McCormick, Robinson Donovan, P.C., Springfield, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' CROSS–MOTION TO COMPEL DISCOVERY RESPONSES (# 81)

COLLINGS, United States Magistrate Judge.

### I. Introduction

Massachusetts Mutual Life Insurance Company ("MassMutual" or "plaintiff") filed its Complaint (# 1) against the defendants, claiming that the defendants violated the Massachusetts Uniform Securities Act by making misrepresentations in connection with plaintiff's purchase of certain mortgage-backed securities. Jurisdiction is based on diversity of citizenship. (Compl. ¶ 20)

### II. Factual Background

Judge Ponsor has related the background to this case in an opinion on the defendants' motions to dismiss. *Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC, et al.,* 843 F.Supp.2d 191, 198 (D.Mass. 2012).[1] As support for the misrepresenta-

---

1. Although the instant case, C.A. No. 11–30285, is not listed in the opinion, by agreement, the parties in the case agreed that "[t]he arguments asserted in motion to dismiss in the '035 Action

tions alleged in the complaint, plaintiff relied on "the results of a pre-filing analysis regarding the LTV (loan-to-value) ratios . . . in the offering materials." (# 93 at 2 citing Compl. ¶¶ 57–156) This process is described in more detail in paragraphs 62–68 of the Complaint as follows:

62. MassMutual commissioned a forensic review of the mortgage loans underlying the Certificates to determine whether the characteristics of the mortgage loans, as represented in the Offering Materials, were accurate.

63. As part of the forensic review, data relating to the collateral loans underlying each of the securitizations was gathered from multiple public sources, including assessor, DMV, credit, and tax records, as well as proprietary sources such as loan servicing, securitization, and mortgage application records. The data relating to individual mortgage loans was then compared to the representations made in the Offering Materials.

64. The forensic review tested the appraised values and loan-to-value ratio ("LTV") of each property, as represented in the Offering Materials, through an industry-standard automated valuation model ("AVM").

65. The LTV is the ratio of a mortgage loan's original principal balance to the appraised value of the mortgaged property. This ratio was material to MassMutual and other investors because higher ratios are correlated with a higher risk of default. A borrower with a small equity position in a property has less to lose if he or she defaults on the loan. There is also a greater likelihood that a foreclosure will result in a loss for the lender if the borrower fully leveraged the property. LTV is a common metric for analysts and investors to evaluate the price and risk of mortgage-backed securities.

66. For each of the loans reviewed, the underlying property was valued by an industry-standard AVM. AVMs are routinely used in the industry as a way of valuing

properties during prequalification, origination, portfolio review, and servicing. AVMs have become ubiquitous enough that their testing and use is specifically outlined in regulatory guidance and discussed in the Dodd–Frank Act. AVMs rely upon similar data as in-person appraisals—primarily county assessor records, tax rolls, and data on comparable properties— and assume an "average" condition of the property. AVMs produce independent, statistically-derived valuation estimates by applying modeling techniques to this data. The AVM that MassMutual used incorporates a database of 500 million mortgage transactions covering ZIP codes that represent more than 97% of the homes, occupied by more than 99% of the population, in the United States. Independent testing services have determined that this AVM is the most accurate of all such models.

67. For purposes of MassMutual's forensic review, a retrospective AVM was conducted for each loan to calculate the value of the underlying property at the time each loan was originated. The inputs for each calculation included values of the subject property and values of comparable properties located within a half-mile radius of the subject property that were reported in appraisal records, tax records, sales listings, and completed sales for the 18 months preceding the loan origination date.

68. Applying the AVM results to the available data for the loans underlying the Certificates shows that the appraised values given to the properties were often significantly higher than what the properties were actually worth. This affected the LTV ratios by decreasing the actual value of the properties relative to the loan amounts, which increased the overall ratios. This overvaluation affected numerous statistics in the Offering Materials. . . .

The "forensic review," was conducted by an outside consultant at the direction of plaintiff's litigation counsel. (# 93–1 at ¶ 2) There is no dispute but that the review was a

[C.A. 11–30044–MAP] shall not be rebriefed in this Action, but shall be preserved for appeal as if such arguments had been presented in this Ac-

tion, and the Court's decision on such arguments shall apply fully to this Action." # 27 at 2.

substantial basis upon which the allegations of the complaint were made and was cited in over thirty separate paragraphs of its complaint. (*See* # 1, p. 22–55 ("V. Misrepresentations about Appraisals and Loan–to–Value Ratios Revealed by a Forensic Review of the Mortgage Loans"; "VI. Misrepresentations about Owner–Occupancy Statistics Revealed by a Forensic Review of the Mortgage Loans"))

Defendants sought discovery concerning the forensic review; plaintiff resisted, claiming that the forensic review is protected by the attorney-client privilege and/or work product doctrine. (# 82, p. 3–4) In defendants' view, any privilege was waived when the plaintiff put the materials at issue by relying on them in its complaint. (81, p. 4)

The defendants then filed a motion to compel (# 81) on October 16, 2012 (denoted a "Cross–Motion to Compel . . .") this discovery. They made three arguments in their motion to compel discovery responses: first, that the plaintiff has waived any purported privilege so it should be required to produce the forensic review; second, that production is independently required because the defendants have a substantial need for the documents; or thirdly if the plaintiff is not required to produce the forensic review it should be prohibited from relying on or referring to it. (# 82)

In its response, the plaintiff opposed the defendants' motion, but as to the third ground, stated unequivocally that it does not intend to rely on the forensic review to prove its claims at trial. (# 93, pp. 4–5) The plaintiff contends that the documents concerning the pre-filing forensic review are privileged under the attorney-client privilege and/or are protected by the work-product documents and that the use of the forensic review in the complaint does not operate as a waiver of the privilege or protection because of its disclaimer that it will not use the review in any way to prove its claims at trial. Rather, the forensic review was simply "pre-filing data and analysis used to determine whether allegations have a good-faith basis." (# 93, pp. 4–5) Oral argument was held on February 15, 2013 (# 130) at Springfield, Massachusetts. Letter filings were received post-hearing

(## 131, 134), and the matter is now ripe for decision.

### III. Initial Rulings

■ Since jurisdiction in this "civil case" is based on diversity of citizenship and "state law provides the rule of decision", "state law governs privilege." Rule 501, Fed.R.Evid. Thus whether documents *anent* the forensic review ("forensic review materials") are protected in the first place is governed by Massachusetts law. The Court rules that, under Massachusetts law, the forensic review materials are privileged as attorney-client matter. Under the Massachusetts Guide to Evidence, Section 502(b):

> **(b) General Rule of Privilege.** A client has a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of obtaining or providing professional legal services to the client as follows:
>
> > (2) between the client's attorney and the attorney's representative.

And Section 502(a)(4) provides that "[a] 'representative of the attorney' is one used by the attorney to assist the attorney in providing professional legal services." Mass. G. Evid. § 502(a)(4) (2012).

In the instant case, the "outside consultant" conducted the forensic review as "a representative of the attorney" as defined in the Guide, and materials communicated to the attorney would be protected by the attorney-client privilege. This ruling disposes of the second ground of the motion to compel because "substantial need," even if found, does not operate to overcome the attorney-client privilege.

■ Although not necessary for the ultimate resolution of the motion to compel, the Court, in passing, rules that the forensic review materials are protected by the work-product doctrine. The result is the same whether federal law or Massachusetts state law is applied. *Compare* Rule 26(b)(3), Mass. R. Civ. P. with Rule 26(b)(3), Fed. R.Civ.P. The materials compiled by the outside consultant were clearly "prepared *for use* in possible litigation." *U.S. v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 27 (1st Cir.2009), *cert. denied,* 560 U.S. 924, 130

S.Ct. 3320, 176 L.Ed.2d 1219 (2010) (emphasis in original). The work of the outside consultant who conducted the forensic review was clearly "... prepared ... for a party to the subsequent litigation," i.e., the instant case. *Id.* at 29 (quoting *Federal Trade Commission v. Grolier, Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983)).[2]

### IV. The Major Question—Applying Rule 502(a)(3), Fed. R. Evid., "in Fairness," Should what has been Disclosed be "Considered Together" with what is Sought by the Motion to Compel?

#### A. Rule 502(a), Fed.R.Evid.

■ Since plaintiff's disclosure of privileged information occurred in a federal proceeding, Rule 502, Fed. R. Evid. applies. Rule 502 differs from Rule 501 in that Rule 502 "... appl[ies] even in diversity cases and others where state law provides the rule of decision." 23 Wright and Graham, *Federal Practice and Procedure,* § 5441 at 869 (Supp. 2013) (footnote omitted). Rule 502(a), Fed.R.Evid., provides:

> (a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

Rule 502(a), Fed.R.Evid. .

In the present case plaintiff's counsel knew that the revelations *vis-a-vis* the forensic review would operate as a waiver of the attorney-client privilege as to what was actually disclosed in the complaint, so the waiver was "intentional."[3] Further, there can be no doubt that what was disclosed in the complaint and what is sought by the motion to compel "concern the same subject matter." Rule 502(a)(2), Fed. R. Evid. The issue of waiver, in the end, is determined by whether what is disclosed and what is sought by the motion to compel "ought in fairness be considered together." Rule 502(a)(3), Fed. R.Evid.

#### B. Traditional Analysis for Waiver of Privilege

■ The question of fairness is a major theme addressed in the cases cited by the parties. (## 82, 93) As the Second Circuit pointed out, the "considerations—which underlie 'the fairness doctrine'—aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *In re von Bulow,* 828 F.2d 94, 101 (2d Cir.1987). "It is well settled that waiver may be imposed when 'the privilege-holder has attempted to use the privilege as both a "sword" and a "shield".'" *Granite Partners, L.P., et al. v. Bear, Stearns & Co., Inc., et al.,* 184 F.R.D. 49, 54 (S.D.N.Y.1999) (quoting *In re von Bulow,* 828 F.2d at 102).

The themes from the cases cited by counsel for the parties include whether the privileged material was placed directly "at issue" in the litigation such that any privilege has been waived, whether the claims and defenses are so "enmeshed" in privileged evidence that the material must be produced, and balancing fairness concerns arising from withholding privileged materials. *See Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire,* 838 F.2d 13, 20 (1st Cir.1988); *Columbia Data Products, Inc. v. Autonomy Corp. Ltd.,* CIV.A. 11–12077–NMG, 2012 WL 6212898, *17 (D.Mass. Dec. 12, 2012) ("Although the First Circuit has yet

---

**2.** If the work-product doctrine rather than the attorney-client privilege were found to be applicable, on the record before the Court, the defendants have not shown that they have "... substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(ii), Fed.R.Civ.P.

**3.** For a discussion of the difference between requiring that the "waiver" rather than the "disclosure" be intentional, *see Bear Republic Brewing Co. v. Central City Brewing Co.,* 275 F.R.D. 43, 46–49 (D.Mass.2011). However, the distinction is immaterial in the instant case.

to clarify the scope of implied waivers, it has instructed that '[s]uch waivers are almost invariably premised on fairness concerns.'"); *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 206, 208 (D.Mass.2000). Courts have also found a waiver of privilege when the claims and defenses are so "enmeshed" in privileged evidence that it would be unfair to withhold the material from the defending party. *Greater Newburyport Clamshell Alliance*, 838 F.2d at 20 ("... [T]he privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.").

In the instant case, the plaintiff's claims are almost entirely premised on the results of its review. (*See* # 1) Thus, the defendants' answers and defenses likewise respond to plaintiff's reliance on the privileged material. This would make the forensic review relevant but, on the facts of this case, is the forensic review "enmeshed" such that the privilege should fall? *See Sorenson*, 197 F.R.D. at 208. Put another way, is forensic review "enmeshed" if it will in no way be used as evidence to prove MassMutual's claims?

### C. The Effect of MassMutual's Declaration that the Results of Forensic Review will not be Introduced as Evidence at Trial

█ A recent decision by Judge Dein, *Columbia Data Products, Inc. v. Autonomy Corp. Ltd.*, is helpful to the analysis. In that case, prior to commencing litigation, the plaintiff retained PriceWaterhouseCoopers ("PWC") as an independent auditor to investigate the defendant, purportedly under the terms of its license agreement with the defendant. *Columbia Data Products*, 2012 WL 6212898, at *18. However, the plaintiff affirmatively withheld from the defendant that PWC was retained by plaintiff's litigation counsel. *Id.* The defendant claimed it never would have allowed PWC access for the audit had it known the purpose was for litigation. *Id.*

Judge Dein held that the documents at issue (including drafts of the audit report and email communications regarding the audit) were not protected by the work product or attorney-client privilege even though they were ordered by litigation counsel because the audit was conducted pursuant to the license agreement between the parties and PWC did not participate in or facilitate rendering legal advice in conducting its audit. *Id.* at *1, *16. However, more important for present purposes, Judge Dein noted that even if the audit could be considered work product, the plaintiff had waived its privilege. She noted that:

> In its breach of contract claim, [the plaintiff] asserts that it 'exercised its right under the License Agreement to audit Defendants' books and records' and that it 'retained the independent accounting firm of [PWC] to perform the royalty audit of Defendants' records.' CDP further alleges that '[a]fter a detailed review of the records made available by Defendants and interviews of Iron Mountain personnel, PWC determined the estimated royalties due to be in excess of $23 million.'

*Columbia Data Products, Inc.*, 2012 WL 6212898, at *9 (internal citations omitted).

The waiver occurred because the plaintiff put the results directly at issue in the case ("Nor can there be any dispute that CDP put the audit report directly at issue in the litigation by relying on data and interviews conducted by PWC in support of its breach of contract and 93A claims, by seeking over $23 million in damages based on the conclusions reached by PWC in that report....") and out of fairness to the defendant ("... fairness requires that the defendants be allowed to explore the full panoply of information available to PWC for its 'independent' audit. It is only fair that [defendant] ... be allowed to explore the circumstances surrounding PWC's engagement, the information available to PWC, the basis for PWC's understanding of [defendant's] obligation, and the manner of its performance of the audit, among other things."). *Id.* at *16, *18.

The defendants argue that the *Columbia Products* case is analogous to the case at bar and should govern the analysis of the plaintiff's possible waiver of privilege. In some ways it is. The audit was done prior to litigation and was heavily relied on in the

complaint. However, the salient distinction is that in that case, the plaintiff fully intended to use the results of the audit as evidence at trial. Specifically, PWC was expected to testify to the results of the audit as plaintiffs expert witness at trial. *Columbia Data Products, Inc.*, 2012 WL 6212898, at *10. As noted, the opposite is true in the instant case.

Thus, the Court looks to cases in which pre-litigation evaluations, audits or reviews are referenced in support of the allegations of the initial complaint and whether there is a disclaimer that the materials will not be used as evidence at trial to prove any of plaintiff's claims. As one court faced with a similar issue wrote:

> This motion [to compel] presents one of the more difficult issues presented in instances of corporate crisis, whether or not to investigate and if an investigation is warranted, as obviously was the case in this instance, the degree to which [a] privilege can prevent disclosure of fruits of the investigation. The issue in large measure turns upon the use to which the privileged materials are put and whether such use constitutes a waiver of the privileges involved.

*Granite Partners, supra*, 184 F.R.D. at 52–3.[4]

There is a state court decision from New York with similar facts to the instant case in which the court found no waiver of privilege and distinguishes the *Granite Partners* case. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 35 Misc.3d 1205(A), 950 N.Y.S.2d 724 (Table), 2011 WL 7640152 (N.Y.Sup.Ct. Jan. 25, 2011), *aff'd*, 93 A.D.3d 574, 941 N.Y.S.2d 56 (N.Y.App.Div.2012). In the *MBIA* case, the plaintiff provided financial guarantee insurance for fifteen residential-mortgage-securitizations and alleged that the defendants (collectively "Countrywide") "fraudulently induced it into providing the financial guaranty insurance on the securitizations by misrepresenting Securitizations' underlying loan population" and misled it as to the "complete and true loan profiles of the loans included in the Securitizations' loan pools." *MBIA Ins. Corp.*, 2011 WL 7640152, at *1. Prior to filing suit, plaintiffs counsel hired an outside investigating firm to do a forensic re-underwriting of the mortgage loans and a servicing audit; the firm issued a report to plaintiff's counsel reporting its findings. *Id.* at *2–3. The results of the re-underwriting and servicing audit convinced plaintiff and its attorneys that it had a claim against Countrywide, and in their amended complaint, the plaintiff expressly referenced the re-underwriting review asserting that "[I]n fact, MBIA's re-underwriting review has revealed that 91% of defaulted delinquent loans in these fifteen Countrywide Securitizations show material discrepancies from underwriting guidelines." Amended Complaint ¶ 80, 2009 WL 8634075 (N.Y.Sup.).

The trial court concluded that the forensic re-underwriting and servicing audit were protected by the attorney-client privilege and the work product doctrine. *MBIA Ins. Corp.*, 2011 WL 7640152, *5–8. The court further held that there had been no waiver in the circumstances because "... MBIA has not used the ... documents in a way inconsistent with the principles underlying the doctrine of the applicable trial preparation privilege and invasion of the privilege is not necessary to determine the validity of MBIA's claim." *Id.* at *7 (citing *Granite Partners*, 184 F.R.D. at 54).

The MBIA case was affirmed by the Appellate Division, First Department. *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 93 A.D.3d 574, 941 N.Y.S.2d 56 (2012). The Court, referring to the materials as the "repurchase review," wrote:

> Plaintiff has not waived any privilege by referencing its repurchase review in its amended complaint. Indeed, plaintiff does not need the privileged materials concerning the review to sustain its causes of action.

---

4. The Court cites the *Granite Partners* case only for the manner in which the Court states the issue. In fact, the Court in that case found a waiver based on a release of a report of the investigation which quoted selectively from witness interviews, information from documents procured during the investigation and the results of an expert's analysis. *Granite Partners*, 184 F.R.D. at 51. In addition, notes of witness interviews were used to impeach witnesses at depositions. *Id.* at 55. The facts clearly distinguish the case from the instant one.

*Id.,* 93 A.D.3d at 575, 941 N.Y.S.2d at 58 (citing *Manufacturers & Traders Trust Co. v. Servotronics, Inc.,* 132 A.D.2d 392, 397, 522 N.Y.S.2d 999 (1987) and *Deutsche Bank Trust Co. of Americas v. Tri–Links Investment Trust,* 43 A.D.3d 56, 64, 837 N.Y.S.2d 15 (2007)).

The *Deutsche Bank* case, cited in both the lower court's and appellate division's opinions in the *MBIA* case, put it this way:

> Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication 'at issue' in the lawsuit; if that were the case, a privilege would have little effect. *Rather, 'at issue' waiver occurs 'when the party has asserted a claim or defense that he intends to prove by use of the privileged materials.'*

*Deutsche Bank Trust Co. of Americas v. Tri–Links Investment Trust,* 43 A.D.3d 56, 64, 837 N.Y.S.2d 15, 23 (2007) (emphasis added) (quoting *The North River Ins. Co. v. Columbia Casualty Co.,* 1995 WL 5792, *6 (S.D.N.Y. Jan. 5, 1995) (applying New York law) (quoting *Pittston Co. v. Allianz Ins. Co.,* 143 F.R.D. 66, 71 (D.N.J.1992) (applying New Jersey law) and citing *Remington Arms Co. v. Liberty Mutual Ins. Co.,* 142 F.R.D. 408, 415 (D.Del.1992) (applying Connecticut law))).

The Appellate Division again had the opportunity to apply these principles to a factual scenario similar to the one in the instant case. *Ambac Assurance Corp. v. DLJ Mortgage Capital, Inc.,* 92 A.D.3d 451, 939 N.Y.S.2d 333 (2012). The case involved securitization of home equity lines of credit which were grouped and then put into a trust "formed to issue securities to investors." *Id.,* 92 A.D.3d at 451, 939 N.Y.S.2d at 334. Defaults began to occur on the loans, and as a result, the plaintiffs "... retained a law firm, which retained RMG Global (RMG) to conduct a forensic re-underwriting review of the loans in the securitization." *Id.* After litigation was commenced, the plaintiffs turned over "RMG's conclusions and the raw data" but would not turn over "correspondence between RMG and the law firm plaintiffs retained, and documents concerning methodol-

ogy employed by RMG in its review." *Id.* The trial court found that the plaintiffs "... waived privilege by placing the materials 'at issue'." *Id.,* 92 A.D.3d at 452, 939 N.Y.S.2d at 335.

The Appellate Division reversed, writing that "[g]enerally no 'at issue' waiver is found where the party asserting the privilege does not need the privileged documents to sustain its cause of action." *Id.* (citing *Deutsche Bank,* 43 A.D.3d at 65, 837 N.Y.S.2d at 24). The court concluded:

> Here, plaintiffs did not waive privilege by placing RMG's review of the loans 'at issue.' All references to the 'third-party consultant' in their complaint could be stricken and it would still stand. Mention of a third-party consultant was not made as an element of the claim, but as a good-faith basis for the allegations made. Since plaintiffs do not 'need the privileged documents to sustain [their] cause of action,' they have not 'waived the attorney-client privilege by injecting privileged materials into the lawsuit.'

*Id.,* 92 A.D.3d at 452–53, 939 N.Y.S.2d at 335 (citing *Manufacturers & Traders Trust Co.,* 132 A.D.2d at 397, 522 N.Y.S.2d at 1003).

While neither the *Deutsche Bank* decision or any of the cases which are cited on pages 249–51, *supra,* were applying Massachusetts law, the Court finds them instructive on the question now at issue in the instant case, i.e., whether "fairness" requires a ruling that the forensic review must be produced because of what was disclosed about it in the complaint even though MassMutual will not use the review in any way to prove its case.

Further, the concept is not without application in this District. Over forty years ago then District Judge Campbell issued an opinion in *American Optical Corp. v. Medtronic, Inc.,* 56 F.R.D. 426 (D.Mass.1972) which bears on the question. The defendant Medtronic manufactured pacemakers. American Optical alleged that the pacemakers infringed its patent. The parties negotiated a license so Medtronic could use the patent. *Id.* at 427. At some point, Medtronic stopped paying licensing fees, and litigation ensued. *Id.* at 428–9. Medtronic was of the view that the patents were invalid and, if valid, it never

infringed them but that it agreed to the license for strategic and economic reasons. *Id.* at 427. In its amended complaint, Medtronic asserted that:

> ... [A]t the time of the charge of infringement, the nature of Medtronic's business and finances was such that Medtronic required and was seeking public financing. The uncertainty and cost of a patent litigation affecting a majority of Medtronic's product line precluded Medtronic from seeking public financing and simultaneously litigating the issues of infringement and validity of [American Optical's patent] in spite of Medtronic's belief that the patent was invalid and not infringed.

*Id.* at 428.

Before the license had been signed, Medtronic had hired an attorney to study the patent and to provide legal advice. American Optical sought various documents prepared by the attorney as the negotiations progressed and continuing after the licensing agreement was signed. *Id.* at 429–30. The Court found that the documents were protected by either the attorney-client privilege or the work product doctrine or both. *Id.* at 430–31.

American Optical argued, *inter alia*, that Medtronic had waived the privilege and protection by partial disclosure of the attorney's opinions and conclusions in the course of the litigation both by the passage in the amended complaint, in various memoranda filed in court, and in an affidavit by the lawyer taking "the position that Medtronic took a license not because of its belief that the patent was valid and infringed, but because of Medtronic's desire not to jeopardize its attempt to gain public financing." *Id.* at 432. The Court, although noting that "[s]uch statements, indeed, come perilously close to waiver," nonetheless declined to hold that a waiver had occurred. What was disclosed "... are pre-trial matters, not evidence." *Id.* The Court noted that "[p]artial disclosure on di-

rect examination at trial would be a waiver as to the remainder of the privileged consultation," *id.* (citation omitted), and

> If, during the course of trial, Medtronic seeks to prove its assertion that at the time the license was taken it believed the patent invalid and not infringed, and, especially, if its relies in support of that position on testimony of [the attorney] and/or its officers as to what was communicated among themselves, then fairness might require a ruling that the privilege was waived as respects all of those communications.

*Id.*

The case of *Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP*, 03CIV.5560 (RMB)(HBP), 2008 WL 5423316 (S.D.N.Y. Dec. 31, 2008) is also helpful. Plaintiffs alleged fraud resulting in the necessity to restate financials and to increase loss reserves allegedly resulting in 50 million dollars in damages. *Id.* at *10. Plaintiffs identified a lawyer "... as one of the individuals who participated in the decision to restate [the] financials and seek as damages attributable to the alleged understated reserves more than $50 million dollars." *Id.* The defendant argued that the "... claim for damages resulting from the restatement puts at issue plaintiffs' communications with [the lawyer] concerning the need to restate [the] financials." *Id.* at *11. Consequently, the defendant argued that there was an "at issue" waiver of all communications between the lawyer and the plaintiffs. *Id.*

The Court found no waiver because the lawyer's advice was not likely to be used to prove the plaintiffs' claims, but that if it were, there would be a waiver.[5] *Id.* at *12. The Court chose not to wait until trial to see if that occurred; rather, it issued a preclusion order.

---

**5.** The Court basically found the lawyer's advice concerning the need to restate the financials as "immaterial" from an evidentiary point of view. The undersigned came to basically the same conclusion when deciding the extent to which the pre-litigation disclosure of an attorney's advice resulted in the waiver of the attorney-client privi-

lege. *AMCA International Corp. v. Phipard,* 107 F.R.D. 39, 44 (D.Mass.1985) ("I fail to see how counsel's memorandum has any evidentiary significance other than the fact that it was written and was employed as part of the notice to the defendant of the changes which plaintiff was making.")

## D. The Bottom Line

As stated, *supra*, at p. 248, the issue of waiver, in the end, is whether what was disclosed and what is sought by the motion to compel "ought in fairness be considered together." Rule 502(a)(3), Fed.R.Evid. Based on the above-cited case law, the Court rules that, in the circumstances of the instant case, "fairness" does not require that MassMutual disclose any additional documents or information relative to the forensic review. The major factor which leads to this ruling is that MassMutual does not need the forensic review to prove its claims and has explicitly eschewed any use of the forensic review as evidence at trial. There has been no "at issue" waiver, and since the forensic review will be not be used as evidence at trial, there is no danger that what has not been disclosed is "enmeshed" with what has been disclosed so as to create any unfairness or prejudice to the defendants.[6]

In the Court's view, this result makes good sense from a practical point of view. First, it enables counsel, without fear of waiving the attorney-client privilege, to do that pre-filing work which is necessary to comply with the duty set forth in Rule 11(b)(3), Fed.R.Civ.P., that "factual contentions have evidentiary support."

Second, it enables counsel, without fear of waiving the attorney-client privilege, to undertake whatever investigation is necessary so that any complaint complies with the "plausibility" requirement set forth in the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) *viz.:*

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' ... [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." '

*Id.* (internal citations omitted); *see also Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In various iterations of the instant case, MassMutual relied on its forensic review to meet the "*Twombly* and *Iqbal* standard" to survive motions to dismiss its complaint. *See, e.g., Mass. Mutual v. Residential Funding Co., et al.*, 3:11–cv–30035, # 44, p. 19. The plaintiff stated, "The results of the forensic analysis alleged in the Complaint, which uses a widely accepted methodology and relies on similar inputs as in-person appraisals, are more than sufficient to raise a plausible inference that the represented LTV ratios were knowingly understated and that Defendants' appraisers were systematically ignoring appraisal standards to generate inflated property values, as alleged in the Complaint." *Id.* at 19 (citing *Iqbal*).

Fourth, the result reached in this cases (and other cases cited, *supra*) is that it has the advantage of lending a degree of certainty in defining the parameters of the privilege. As the Supreme Court noted in *Upjohn v. United States*, 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), "... if the purpose of the attorney-client privilege is to be served, the attorney and the client must be

---

**6.** The Court does not agree with the defendants that since they may be able to use the statements in a complaint or amended complaint as "admissions," they are entitled to discovery of the forensic review materials.

able to predict with some degree of certainty ... [what] will be protected [by the privilege]." Drawing the line by what will be used as "evidence" to prove a claim or defense seems the best way to achieve the desired degree of certainty.

### V. Conclusion and Order

Accordingly, the Court rules that under Massachusetts law, the forensic review materials are privileged (attorney-client privilege), that by referencing the conclusions of the forensic review in its Complaint MassMutual waived only what was disclosed, and that since forensic review materials will not be used in any manner as evidence at trial to prove plaintiff's claims, in the words of Rule 502(a)(3), Fed.R.Evid., "fairness" does not require that what was not disclosed be "considered together" with what was disclosed in the Complaint and pleadings filed in connection with the defendants' motion to dismiss. For these reasons, it is ORDERED that Defendants' Cross-Motion to Compel Discovery Responses (# 81) be, and the same hereby is, DENIED.[7]

As is apparent, this ruling is premised on the plaintiff not using or otherwise referencing the forensic review at further proceedings or at trial. If the defendants wish, they make seek to have the plaintiff join them in submitting an agreed-upon preclusion order to the trial judge, or, if agreement cannot be reached, to file a motion for such an order with the trial judge.

---

7. Pursuant to Rule 72(a), Fed.R.Civ.P., any objection to the within Order must be filed within 14 days.